## Case No. 8,600.

LUDLOW v. CLINTON LINE R. CO. et al.

[1 Flip. 25;[1] 3 West. Law Month. 299.]

Circuit Court, N. D. Ohio. Jan. Term, 1861.

JUDGMENTS — CORPORATIONS — LIEN IN SEVERAL COUNTIES—RECORDING MORTGAGE—SALE—ROAD INDIVISIBLE — EXTENT OF LIEN OF FEDERAL JUDGMENT.

1. In Ohio, a judgment of a court of record creates a lien upon the real estate of a defendant within the county where it is rendered, or where the land is seized in execution; and this is superior to that of a prior unrecorded mortgage made by defendants. This lien is not superseded by the mortgage if subsequently recorded.

2. A judgment against a railroad corporation becomes a lien upon its road and realty, in the same manner as upon the real estate of a natural person.

3. Where the road passes through several counties, the same rule as to lien and sale applies as to an entire tract of land lying in several counties.

4. Where a mortgage by a railroad company of its road, which passes through several counties, is recorded in one of those counties before judgment recovered against the company by a stranger; but is not recorded in the other counties—it has a priority of lien over the judgment upon the part of the road lying in that particular county, but not upon such portions of the road as lie in the other counties.

5. A sale under execution, cannot however, be made separately of that part of the road not subject to the prior lien of the mortgage. For the purpose of sale, the entire road must be treated as indivisible. The whole must be appraised and sold together. The proceeds must be brought into court, and the same be distributed according to priority of liens and the portions of the road subject to such liens respectively.

6. A judgment of the circuit court of the United States has the same effect, as a lien upon lands throughout the district, that a judgment of the state court throughout the county has where it is rendered.

[This was a bill in equity by E. Ludlow, trustee, against the Clinton Line Railroad Company, and Patrick Lavin for the foreclosure of a mortgage.]

Ranney, Backus & Noble, for complainant.
Hitchcock, Mason & Estep, for Lavin.

WILLSON, District Judge. This case was referred to a master in chancery, to inquire and report, whether the defendant, Patrick Lavin, by his judgment rendered in this court, at the July term, for $24,640 and costs, against the Clinton Line Railroad Company, obtained a lien upon the lands of said company, and if so, to what extent. The master, on the 5th of January, 1861, filed his report, in which, without giving any reason for his conclusion, he says that the judgment of said Lavin is not a lien upon any part of the lands of said railroad company.

To this report the counsel for Lavin have filed exceptions, on the ground that the finding of the master is erroneous and contrary to law, in this: 1st—In finding and declaring said judgment not to be a lien on said company's land; and 2d—In his failing to find

---

1 [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

and declare said judgment to be a lien, prior and superior to the complainant's mortgage upon all of said company's land, situate in the counties of Portage, Geauga and Trumbull.

It appears from the record in this case, that the cause of action upon which Lavin recovered his judgment against the company, was for work and labor in grading the road-bed; for constructing culverts and furnishing materials for the same, and generally, for labor and materials furnished in preparing the road of said company for its iron track.

The judgment was rendered in July, 1856, and execution issued on the 19th of April, 1859, and was levied upon lands belonging to the company, situate in the counties of Portage, Geauga and Trumbull. The complainant has brought this suit in equity to foreclose a mortgage given by said railroad company to him as trustee for the security of certain creditors, holders of the bonds of the company, which bonds are accurately described in the trust deed. This mortgage covers, in its terms, the road and real estate of the corporation. It was recorded in the county of Summit, on the 3d day of October, 1855. But it was not received for record, or recorded in the counties of Trumbull, Geauga and Portage, until 1857, and after the rendition of said judgment in favor of Lavin.

The Clinton Line Railroad Company is a corporation organized under the act of the general assembly of Ohio, passed May 1, 1852. Its terminii are fixed and established in the town of Hudson, in the county of Summit, and a point in the Ohio and Pennsylvania state line, in the county of Trumbull. The road has been surveyed and located on a route running through the counties of Summit, Portage, Geauga and Trumbull. Only a portion of the entire line of the road-bed has been graded; no iron rails have been placed upon it. and no equipments have been acquired by the company for operating the road. It seems to be admitted by all parties. that the corporation has abandoned the project of completing the road; that it is insolvent, and that its property must be sold to pay its debts.

This, then, is a contest between creditors for a priority in the distribution of the fund to arise from the sale of the property belonging to an insolvent railroad corporation. whose road cannot be finished and operated by a receiver. And the question is. does the judgment of Lavin operate as a lien upon the lands acquired by the company, for the construction and operation of its road, and upon the road itself?

In determining this question of lien, we are to be governed by the laws of the state of Ohio, and the construction given to those laws by the supreme court of the state. The four hundred and twenty-first section of the Ohio Code of Civil Procedure, provides, that

"the lands and tenements of the debtor within the county where the judgment is entered, shall be bound for the satisfaction thereof, from the first day of the term, at which judgment is rendered." Swan, St. 675.

The limits of a federal judicial district, (in the exercise of the jurisdiction of the U. S. circuit court,) is, as the limits of the county to the local courts. The principles of the state law are adopted, but the instruments which give effect to those principles are necessarily different, as they are made to operate throughout a more extended jurisdiction. In Sellers v. Corwin, 5 Ohio, 400, the supreme court of Ohio decided that the lien of a judgment in the circuit court of the United States, was co-extensive with the territorial jurisdiction of the circuit court. This effect and extended operation of judgment liens in the federal courts, is equally as well established in other states. Lombard v. Bayard [Case No. 8,469]; Koning v. Bayard [Id. 7,924]; Shrew v. Jones [Id. 12,818].

The lien, therefore, of a judgment rendered in this court, has the same effect and operates to the same extent upon the debtor's land throughout the Northern district of Ohio. as the lien of a like judgment, rendered in the state court, operates upon the debtor's land in a county. The language of the statute is clear and explicit, that the land and tenements of the judgment-debtor shall be bound for the satisfaction of the judgment.

Ordinarily such lien attaches only to lands in which the debtor has the legal title. But. by the judgment of the highest judicial tribunal of the state, a railroad and the lands necessary for its operation, (by whatever title such lands are held) together with the franchise of maintaining the road and demanding compensation for the transportation of passengers and property, constitutes real estate—possessing the unity and character of a tract of land, and as such, is subject to appraisement and the other incidents of a judicial sale of land. If this doctrine is correct, we do not see why the judgment-lien is not effectual on such property. and secures to the creditor a right equal to that of a mortgagee, whose security on such railroad property is obtained by the voluntary act of the debtor corporation.

It has. however. been urged by counsel. that insolvent railroad corporations furnish exceptional cases, not by reason of any general law of the state, or by virtue of any exemption in the law of their creation, but solely upon considerations of public policy. And the case of Coe v. Columbus, P. & I. R. Co. [10 Ohio St. 372], decided last April by the supreme court of Ohio, is cited by counsel as an authority for the doctrine.

When a statute of Ohio has been interpreted or construed by the supreme court of the state, such interpretation or construction is followed and adopted by this court, if not in conflict with the constitution and laws of

the United States. The case of Coe v. Columbus, P. & I. R. Co., involves the construction of the act of the Ohio legislature of February 11, 1848, in relation to the powers and liabilities of railroad corporations organized under its provisions.

The Clinton Line Railroad Company derives its powers from the act of May 1, 1852. The fifteenth section of this law provides that "such company may acquire by purchase or gift any lands in the vicinity of said road, or through which the same may pass, so far as may be deemed convenient or necessary by said company to secure the right of way, or such as may be granted to aid in the construction of such road, and the same to hold or convey in such manner as the directors may prescribe," etc. And the third section of said act, among other things, provides that said railroad company shall have power to contract and be contracted with, to sue and be sued, to acquire and convey at pleasure all such real and personal estate as may be necessary and convenient to carry into effect the objects of the incorporation.

The first and fourteenth sections of the act of February 11, 1848, contain, substantially, the same provisions as are embraced in the third and fifteenth sections of the act of May 1, 1852. Hence, the construction which the supreme court of Ohio has given to the act of 1848, must be deemed the true and authoritative construction which should be given by this court to the act of 1852, in cases where that construction properly applies. But the case of Coe v. Columbus, P. & I. R. Co., is distinguishable from the case before us in many important particulars.

That was a proceeding in equity to foreclose a mortgage, given by the railroad company, upon its entire property to a trustee, for the benefit of bondholders. The company at the time of the commencement of the suit, had finished the construction and equipment of the road, and was operating the same in the transportation of freight and passengers. The relief asked for was a sale (under an order of court) of the entire road, including the real and personal property of the corporation with its franchises.

The court held, that under the general powers conferred by the act of February 11, 1848, the company had no authority to alienate the franchise "to be a corporation;" but that the railroad, with its fixtures, constituting an entire tract of real estate—(indivisible for the purpose of sale) together with certain franchises connected therewith, should be sold in like manner as an entire tract of land lying in two or more counties.

In that case there was no substantial question in relation to conflicting liens between judgment creditors and mortgagees. It is true, it appeared that one Hilliard had recovered a judgment against the company, for money advanced, and had levied execution upon a part of the railroad, rails, superstructure, etc. But the recovery by Hilliard of his judgment, and the levy of the execution, were transactions subsequent in time to the giving and recording of the mortgage, and after the commencement of the suit for foreclosure, and while the road and all the property of the corporation were in the hands of the receiver, appointed by the court. The property of the company was thus placed in the custody of the law, and when so held by its proper officer, it could not be the subject of a judgment-lien or levy of an execution.

Yet, it was urged that inasmuch as the consideration of the debt for which Hilliard obtained judgment, was for money advanced in the payment of interest and taxes, and for the right of way, he had an equitable claim as against the mortgagee, and the learned judge, who delivered the opinion of the court, said "those who advance money, or sell on credit to the directors of the company, are bound to take notice of the claim which will arise under the mortgages, which are required by law to be recorded in each of the counties through which the road passes. If they part with their money or property without taking security, we know of no principle upon which one can be created for their benefit. We are not inclined to exempt the company or the mortgagees from the application of any rule of law which could properly apply to the dealings between them, or to the property which is the subject of those dealings, and which would secure or protect the just claims of third persons."

What effect the court would have given to Hilliard's judgment had it been obtained previous to the execution and recording of the mortgages, we are left to conjecture from what is said in another part of the same opinion. The learned judge says: "It may be true that a railroad corporation holds its property in a certain sense, as a public trust, to answer the purpose of a public highway for the transportation of persons and property. But it is consistent with that public trust to contract obligations. Indeed, the very exercise of the trust necessarily involved obligations to individuals, and to meet those obligations the property of the corporation must in some form be liable. The question is, in what form? Shall it be in the ordinary legal form applicable to the property of individuals, or shall peculiar rules be introduced, which may have the effect to delay creditors and operate as a shield to protect property from their just demands?"

Again, he says: "We are satisfied that it is not the policy of the state, nor just to individuals, that the power of a court should be invoked to enable an insolvent corporation to operate a railroad, by protecting its

property from the claims of creditors, of those who have performed for it labor, or have suffered loss or sustained injuries by the misconduct of its agents. We think the true policy of the state requires, that just demands should be met, and that the property of those, against whom they exist, should be applied for the purpose."

The supreme court of Ohio, in the case referred to, fully approve of the well established principle, that the mere grant to a body corporate, in the absence of any restriction, gives the right to acquire and dispose of real estate; .and in such case a corporation may be regarded as occupying the position of an individual owner of land. There is the same voluntary alienation and a like liability to involuntary alienation. What a corporation can convey its creditor may subject.

We can see nothing in the railroad policy of the state, as interpreted by the supreme court, or in the act of May, 1852, which should exempt from judgment liens, the lands and road owned by the Clinton Line Railroad Company. Its power to pledge lands, by way of mortgage to pay creditors, implies the right of a creditor to subject such lands, by legal proceedings, to the payment of its debts. The law of its charter confers the power to acquire lands, and "the same to hold and convey in such manner as the directors may prescribe." The power to convey is without any restriction as to mode or purpose. In that respect the corporation has all the freedom of action which belongs to natural persons. Its power of alienation, therefore, whether voluntary or involuntary, should be subject to the incidents which attach to individuals.

With this view of the case, we are clearly of the opinion, that the lands and road of the Clinton Line Company are subject to the operation of the general law of the state, which law declares, that the lands and tenements of the judgment-debtor shall be bound for the satisfaction of the judgment.

The next question is, how may Lavin enforce his judgment lien? or, in other words, in what way can it be legally made available to him? It is against the declared policy of the state to disintegrate a line of railroad by a sale of a portion of the land over which it runs. The whole road, and the land necessary for its operation, together with the franchises of the corporation to maintain the railroad and demand compensation for the transportation of passengers and property, must be sold, and for the purposes of the sale, such property is to be considered as one tract of land, lying in different counties, and subject to appraisal and the forms of law usual in other cases of a judicial sale of lands. The proceeds of the sale will be brought into court for distribution according to priority of liens.

This course of procedure is the one established by the supreme court of the state in relation to the sale of railroads, and one which we do not feel at liberty to vary in this case. The complainant having caused his mortgage to be recorded in the county of Summit before Lavin obtained his judgment, the mortgage has priority over the judgment upon the road and lands of the company situate in that county. But, as the complainant failed to record his mortgage in the counties of Portage, Geauga and Trumbull, until after the rendition of the judgment, the judgment has priority over the mortgage upon the road and lands of the company in those counties.

There must be separate appraisals of the two portions thus designated, but the entire road and lands may be sold as one tract, at not less than two-thirds of the aggregate appraisal. The exceptions to the master's report are sustained.